**ALLEGHENY UNIFORMS, Plaintiff,**

v.

**HOWARD UNIFORM COMPANY et al.,
Defendants.**

Civ. A. No. 74–883.

United States District Court,
W. D. Pennsylvania.

Nov. 21, 1974.

James S. Carey, Jr., Pittsburgh, Pa., for Allegheny Uniforms.

James R. Duffy, Pittsburgh, Pa., for Port Authority of Allegheny County.

## OPINION AND ORDER

MARSH, Chief Judge.

This is a civil anti-trust action brought under the Sherman and Clayton Acts, 15 U.S.C. §§ 1, 2 and 15 U.S.C. §§ 15, 26 respectively. The plaintiff Allegheny Uniforms (Allegheny), seeks injunctive relief and treble damages together with a reasonable attorney's fee and costs of suit against the defendants.

It is alleged that Allegheny manufactures, distributes and sells uniforms; that the employees of the defendant Port Authority of Allegheny County (Port Authority) are required by the Port Authority to wear uniforms of a specific type, design, color, etc. while performing their duties as operators of the Port Authority's vehicles; that the operators are represented by, and are members of the Amalgamated Transport Union, Division 85 (Union), the duly authorized collective bargaining representative for the operating and maintenance employees of the Port Authority.

The Port Authority subsidizes part of the costs to the individual operators purchasing the required uniforms or parts thereof, provided that the uniform articles purchased are those which have been approved for sale to the operators by the Port Authority and the Union, and provided that the uniform articles are purchased from the defendant, Gimbel Brothers, Inc. (Gimb ls), at their retail store in Pittsburgh.

The only uniforms which the Port Authority and the Union have approved for sale to the operators are those manufactured and distributed by the defendant, Howard Uniform Company (Howard), despite the fact that the plaintiff manufactures, distributes and sells uniforms that are, "for all practical purposes," identical in design and quality and comply in all respects with the specifications established by the Port Authority for the uniforms its operators are required to wear.

Prior requests made by plaintiff that it be authorized to either manufacture, distribute or sell its uniforms to the Port Authority operators have "arbitrarily and capriciously been denied plaintiff by the defendants."

It is alleged that the defendants have conspired to deny to the plaintiff approval and authority to sell uniforms to the Port Authority operators and have conspired and agreed that the only authorized outlet for the purchase of uniforms for which the operator will receive a subsidy is that of Gimbels.

Finally, plaintiff alleges that the defendants have conspired to ensure that only those uniforms manufactured by Howard and sold by Gimbels will be purchased by the Port Authority operators, and have contracted, conspired and agreed to withhold the aforementioned subsidy from the Port Authority operators for any uniforms or parts thereof which the operators purchase from the plaintiff.

All of the above acts of the defendants are alleged to be in restraint of trade and commerce among the states in the United States, in that they intentionally did prevent plaintiff from manufacturing, distributing and selling uniforms to the operators of the Port Authority; and did create and produce and constitute a monopoly, and had the intentional effect of an attempt to monopolize the manufacture, distribution and sale of uniforms in the Western Pennsylvania area to the injury and damage of the plaintiff in violation of the Sherman Anti-Trust Act.

The Port Authority moved to dismiss the action against it under Rule 12(b) Fed.R.Civ.P. for failure to state a claim against it upon which relief can be granted. The motion is based on the fact that the Port Authority is a public body corporate and politic, exercising the public powers of the Commonwealth as an agency thereof, having been organized and existing for the purpose, among others, of acquiring, maintaining and operating a transportation system in the County of Allegheny under "Second Class County Port Authority Act" 55 Pa.Stat.Ann. § 551 et seq., and as such is not subject to the provisions of the Sherman and Clayton Acts. The motion will be denied.

The Port Authority in its brief sets out the specific language of the Act as follows:

"There are hereby created bodies corporate and politic in counties of the · Second Class, to be known as the Port Authority of (Allegheny County), which shall constitute public bodies corporate and politic; *exercising the public powers of the Commonwealth as an agency thereof.* Each Authority shall be for the purpose of . . . *maintaining and operating,* . . . a transportation system in the County by which it is incorporated and outside of the county to the extent necessary . . ." (Emphasis supplied by Port Authority).

The Port Authority relies on Parker v. Brown, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943) in support of its motion to dismiss. In *Parker* it was held that a state imposed restraint is an act of a sovereign government which the Sherman Act did not undertake to prohibit. The Port Authority argues that its actions as alleged in the complaint, which at this stage of the litigation must be taken as true, did not violate the Sherman Act because it was acting pursuant "to a specific legislative directive and exercising public powers of the Commonwealth."

■ In our opinion it is not every act of a state created entity that points a way to anti-trust protection. We search the cited act of the legislature in vain to find express language authorizing the Port Authority to manufacture, distribute or sell uniforms to be worn by its operators. The only anti-competitive effect of the Act was upon other private corporations who might desire to transport passengers in buses. In the latter situation state action was not violative of the federal anti-trust laws.[1]

1. Ladue Local Lines, Inc. v. Bi-State Dev. Ag. of Mo.-Ill. Met. D., 433 F.2d 131 (8th Cir. 1970).

Although we do not disagree that the Port Authority has power under the enabling legislation to require its employees to wear uniforms of a specific type, design, color, etc., and agree to subsidize part of the purchase price, the Port Authority's power cannot extend beyond the purposes authorized by the legislature. Immunity or exemption from the federal anti-trust laws will not be lightly implied. Unless the purpose and scope is defined and expressed in the legislative act there is no immunity from the anti-trust laws. The legislature did not specifically empower the Port Authority as an instrumentality to manufacture, distribute or sell uniforms to its operators; hence, neither the Port Authority, nor Howard are performing a function mandated by the legislature and are subject to anti-trust strictures. It does not appear at this stage of the litigation that any of the defendants enjoy anti-trust immunity from liability for their alleged conduct.[2]

Not every legislative act automatically confers state action exemption. "The concept of state action is not susceptible to rigid, bright-line rules. Each case must be considered on its own facts in order to determine whether or not the anti-competitive consequence is truly the action of the state." Woods Exploration & Producing Co. v. Aluminum Co. of America, 438 F.2d 1286, 1294 (5th Cir. 1971).

It should be noted that the Port Authority bears the burden of establishing the defense that it has acted within the ambit of governmental action. See 12 A.L.R.Fed. 329, 335 and cases cited therein. At the argument the court directed three questions to counsel for the Port Authority, all of which were answered in the negative.[3] These answers tend to negative governmental action, direction or control.

No case was presented, nor has any been found, which authorizes an entity created by a state legislature to act or enter into transactions not mandated or directed by legislative enactment. Thus, we think such unmandated acts or transactions are ultra vires and illegal. Cf. Travelers Ins. Co. v. Blue Cross of Western Penn., 298 F.Supp. 1109 (W.D.Pa.1969) and cases cited therein. Further, as Judge Sorg authoritatively commented in Travelers, "regulation and supervision alone do not constitute delegation of governmental authority." Id. at 1112.

The line of valid versus invalid governmental action must be drawn at some point, otherwise anything the Port Authority does could be said to be furthering a valid governmental purpose. At this stage in the proceeding in this case, the Port Authority has not sufficiently shouldered its burden to demonstrate as a matter of law that state action authorized it to designate Howard as the sole manufacturer of the uniforms prescribed for its operators, and Gimbels as the only seller of uniforms where its operators would be entitled to a subsidy.

An appropriate order will be entered.

2. Hecht v. Pro-Football, Inc., 144 U.S.App.D.C. 56, 444 F.2d 931 (1971).

3. "1. Does the Port Authority have legislative authority to subsidize the purchase of uniforms for its drivers?
2. Is the purchase of uniforms subject to 55 Purdon's Statutes § 559.1 concerning competitive bidding or contracts?
3. Was the Howard Uniform Co. arrangement for purchase of uniforms ever put out for competitive bidding?"

As to the first question counsel stated he could point to no specific legislation authorizing the Port Authority to subsidize the purchase of uniforms but felt this was included within its broad powers to operate and maintain a transportation system in Allegheny County. Furthermore, the purchase of uniforms was never the subject of competitive bidding since they were apparently acquired on a piecemeal basis by the operators.